```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
DAVID OVERTON, and JEROME I.
KRANSDORF,

                      Plaintiff(s),
                                                  05 Civ. 7956 (JES)
         - against -
                                                  MEMORANDUM OPINION
TODMAN & CO., CPAs, P.C. and TRIEN,                   AND ORDER
ROSENBERG, ROSENBERG, WEINBERG,
CIULLO, & FAZZARI, LLP,

                      Defendant(s).
----------------------------------------X
```
**SPRIZZO, D.J.:**

Plaintiffs, David Overton and Jerome I. Kransdorf, bring this action on behalf of themselves and as assignees of Direct Brokerage, Inc. ("DBI"), against defendants, Todman & Co., CPAs, P.C. and their purported successor-in-interest Trien, Rosenberg, Rosenberg, Weinberg, Ciullo & Fazzari, LLP (collectively "Todman" or "defendant"), alleging a violation of section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as several state law causes of action. Defendant brings this motion to dismiss plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendant's motion as to plaintiffs' federal claim and declines to exercise jurisdiction over the remaining, state law causes of action.

## BACKGROUND

The following factual allegations are taken from plaintiffs' Complaint, and, on this Motion to Dismiss, are accepted as true. See Rombach v. Chang, 355 F.3d 164, 169 (2d Cir. 2004).

DBI, a registered securities broker-dealer, was formed in July 1997 and from 1999 to 2002 it employed Todman as its independent outside auditor. See Compl. ¶¶ 2, 13, 15. Todman was given the task of auditing DBI's year-end financial statements, id. ¶ 15, and in furtherance of this duty Todman had "full and unrestricted access to all of DBI's documents, books and records," id. ¶ 17. For each of the years from 1999 to 2002 Todman "rendered an unqualified opinion that

DBI's financial statements 'present fairly in all material respects' the financial position of DBI as of the stated date." Id. ¶¶ 17-19.

However, in early 2003 DBI was contacted by the New York State Division of Taxation and the New York City District Attorney's Office about unpaid payroll taxes dating back to 1999. Id. ¶ 34. It was determined that DBI owed more than $3 million in unpaid payroll taxes, interest, and penalties. Id. ¶¶ 23, 37.

In Summer 2003, DBI decided to investigate the situation and it hired Integrated Management Solutions, a forensic accounting firm, to visit Todman's offices and to evaluate the audits that Todman had performed. Id. ¶¶ 35-36. The investigation revealed that Paul Freed, DBI's former Chief Financial Officer, "was involved in the failure to record the payroll tax liabilities on the books at DBI." Id. ¶ 39. It was also determined that Todman's audits had been "deficient," id. ¶ 36, and had "deviated materially" from Generally Accepted Auditing Standards, id. ¶¶ 21-32.

In order to keep DBI afloat, officers and directors of the firm looked to infuse new capital into the business. Id. ¶ 37. Todman, which by this time had learned of DBI's troubles and the inaccuracy of the financial statements that it had audited, was aware of DBI's "need for additional capital." Id. ¶ 38. By January 2004 plaintiff Jerome I. Kransdorf, who "managed an independent business at DBI," id. ¶ 41, had introduced DBI to plaintiff David Overton, a potential investor, id. ¶¶ 40-42. In order to assist Overton in deciding whether to invest, DBI provided him with its 2002 audited financial statement, which had been issued by Todman on February 13, 2003. Id. ¶¶ 43, 45.[1]

On January 20, 2004, Overton entered into a Stock Purchase Agreement and Subordinated Loan Agreement with DBI. Id. ¶ 45. Pursuant to those agreements, Overton invested $500,000 in the firm and loaned it an additional $1.5 million. Id. ¶ 45; Aff. of Jordan Sklar, dated Dec. 14, 2005, Exs. B, C. In April 2004 DBI defaulted

---

[1] The audit of DBI's 2003 financial statements had at that time not yet been completed. Compl. ¶ 43.

on the Loan Agreement and was forced to cease operations after being suspended by the New York Stock Exchange. Compl. ¶ 46. Overton lost his entire investment. Id. ¶¶ 4, 61.[2]

This action was brought by Complaint dated September 12, 2005. Plaintiffs contend that "Todman's actions give rise to liability under Rule 10b-5 because it remained silent about known material errors in the financial statements which [it] certified, at a time when it knew potential investors would be relying on its professional opinion in making an investment decision." Pls.' Mem. at 2. Defendant moved to dismiss the Complaint by Motion dated December 14, 2005. Plaintiffs submitted an Opposition to defendant's Motion dated January 17, 2006, and the Court heard Oral Argument on March 31, 2006.

## DISCUSSION

On a motion to dismiss, a court must accept all of the allegations set forth in the complaint as true, and must draw all reasonable inferences in favor of the plaintiffs. Rombach, 355 F.3d at 169; Halperin v. eBanker USA.COM, Inc., 295 F.3d 352, 356 (2d Cir. 2002). Dismissal is appropriate only when it is clear that the plaintiffs can prove no set of facts "in support of their claims that would entitle them to relief." Halperin, 295 F.3d at 356.

In order to state a claim under section 10(b) and Rule 10b-5, plaintiffs must allege that defendant "'(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'" Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005) (quoting In re Int'l Bus. Machs. Corporate Sec. Litig., 163 F.3d 102, 106 (2d Cir. 1998)).[3]

---

[2] The facts alleged above form the basis for plaintiffs' sole federal cause of action. In addition to that claim, Overton and Kransdorf allege several state law causes of action that arise from damages caused to them individually, see Compl. ¶¶ 73-86, and as assignees of DBI pursuant to an Assignment and Forbearance Agreement, see id. ¶¶ 62-72. Because the Court finds that plaintiffs have not pleaded a federal cause of action, it need not further discuss plaintiffs' remaining claims.

[3] As an initial matter, because this case arose after July 30, 2002, the applicable statute of limitations is two years from discovery but no longer than five years from the date of violation. See 28 U.S.C. § 1658(b); Shah v. Meeker, 435

Here, although plaintiffs contend that Todman's initial audits were "deficient," Compl. ¶ 36, and "deviated materially" from Generally Accepted Auditing Standards, id. ¶¶ 21–32, plaintiffs argue that the Rule 10b-5 violation occurred "in late 2003-January 2004, when Todman knew that DBI was soliciting investors to invest in DBI" and despite this knowledge "it failed to make any disclosure that the financial statements were materially misleading or take any action to withdraw or amend its unqualified opinion or otherwise prevent DBI from continuing to use the discredited financial statements." Pls.' Mem. at 8. This Court does not agree that this "omission" is actionable under the federal securities laws.

In Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 177 (1994), the Supreme Court ruled that section 10(b) and Rule 10b-5 do not impose liability on aiders and abettors. Rather, in order to be liable under the Rule, one must actually "make[] a material misstatement (or omission)," id. at 191; Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998), that he knows "would be communicated to investors," Wright, 152 F.3d at 175.

Cases dealing with the application of this rule to accountants who are charged with nothing more than inaction are few. Plaintiffs rely heavily on dicta in Wright which, quoting IIT v. Cornfeld, 619 F.2d 909 (2d Cir. 1980), declares that "[a]ccounting firms 'do have a duty to take reasonable steps to correct misstatements they have discovered in previous financial statements on which they know the public is relying.'" Wright, 152 F.3d at 177 (quoting Cornfeld, 619 F.2d at 927); see also In re Warnaco Group, Inc. Sec. Litig., 388 F. Supp. 2d 307, 312 (S.D.N.Y. 2005). Cornfeld, however, was decided before Central Bank, and the analysis quoted by the Wright Court is found within Judge Friendly's discussion of the "substantial assistance" prong of aiding and abetting liability then prevalent under Rule 10b-5. Cornfeld, 619 F.2d at 925–27. Post-Central Bank, the continued vitality of Cornfeld's "duty to act" for accountants is questionable. Cf. In re Parmalat Sec. Litig., 376 F. Supp. 2d 472,

---

F.3d 244, 248-49 (2d Cir. 2006).

500-01 (S.D.N.Y. 2005).

Faced with a dearth of authority compelling a contrary result, this Court finds that, on the facts alleged here, it would stretch Rule 10b-5 liability too far, and would ignore the teachings of <u>Central Bank</u>, to find that defendant's "omission" in this case is actionable under the Rule.

Although plaintiffs criticize the quality of Todman's audits, they do not allege that the audits were fraudulent, that the statements of defendant were knowingly false at the time they were made, or that the work done by Todman was otherwise actionable under the federal securities laws. Thus, this audit could not be the basis of a primary violation by Todman. Moreover, DBI was a closely-held corporation whose stock was not traded on a public exchange. Since every financial statement of a corporation has the potential to be relied on by an entire universe of unidentifiable individuals, for an unlimited period of time after that statement is issued, the outside auditor of a closely-held corporation cannot be required, indefinitely, to notify this entire class of individuals whenever a financial statement, neither fraudulently nor recklessly prepared, is no longer accurate. In fact, at least one circuit court which considered the issue of accountant inaction before <u>Central Bank</u> found that such inaction did not even rise to the level of aiding and abetting liability. <u>See</u> <u>Wessel v. Buhler</u>, 437 F.2d 279, 283 (9th Cir. 1971).

This is especially true in this case since it is alleged that DBI was well aware that the 2002 financial statements were inaccurate several months before it decided to give that statement to Overton. Compl. ¶¶ 34-37, 39. Thus it was DBI, and not Todman, who chose to use the inaccurate financial statements to obtain Overton's investment.[4]

Because this Court finds that the sole federal cause of action asserted by plaintiffs does not state a claim upon which relief can

---

[4] Because the Court finds that defendant did not make an actionable misstatement or omission, it need not discuss defendant's additional arguments for dismissal of the claim.

be granted, this Court declines to exercise jurisdiction over the remaining, state law claims. 28 U.S.C. § 1367(c).

## CONCLUSION

Based on the foregoing, the Court grants defendant's Motion to Dismiss plaintiffs' federal claim with prejudice and dismisses plaintiffs' remaining claims without prejudice to being renewed in the appropriate forum. The Court directs the Clerk of the Court to enter judgment dismissing the Complaint and closing this case.

**It is SO ORDERED.**

Dated: New York, New York
May      , 2006

_____
John E. Sprizzo
United States District Judge

**APPEARANCES**

HUTNER KLARISH LLP
Attorneys for Plaintiffs David Overton
  and Jerome I. Kransdorf
1359 Broadway, Suite 2001
New York, NY 10018

    ERIC S. HUTNER, ESQ.

        Of Counsel


BABCHIK & YOUNG, LLP
Attorneys for Defendants Todman & Co.,
  CPAs, P.C. and Trien, Rosenberg, Rosenberg,
  Weinberg, Ciullo & Fazzari, LLP
200 East Post Road, 2nd Floor
White Plains, NY 10601

    JACK BABCHIK, ESQ.
    JORDAN SKLAR, ESQ.

        Of Counsel