UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
DAVID OVERTON and JEROME I. KRANSDORF,

        Plaintiffs,

  - against -

TODMAN & CO., CPAs, P.C. and TRIEN,
ROSENBERG, ROSENBERG, WEINBERG,
CIULLO & FAZZARI, LLP,

        Defendants.
------------------------------------------------X      05 Civ. 7956 (DAB)
TODMAN & CO., CPAs, P.C. and TRIEN,                    MEMORANDUM & ORDER
ROSENBERG, ROSENBERG, WEINBERG,
CIULLO & FAZZARI, LLP,

        Third-Party Plaintiffs,

  - against -

DIRECT BROKERAGE, INC., THOMAS FLYNN,
ENIKO HENITS, LISA BOUTOTE, PEGGY CHIAT,
PAUL FREED, and PAYCHEX, INC.,

        Third-Party Defendants.
------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/24/09

DEBORAH A. BATTS, United States District Judge.

    Plaintiffs David Overton and Jerome I. Kransdorf (collectively, "Plaintiffs") bring the above-captioned action against Defendants Todman & Co., CPAs, P.C., and Trien, Rosenberg, Rosenberg, Weinberg, Ciullo & Fazzari, LLP (collectively, "Todman" or "Defendants") for securities fraud, breach of contract, professional negligence, common law fraud, and negligent misrepresentation. Plaintiffs are former investors in broker-dealer, Direct Brokerage, Inc. ("DBI"), and charge Defendants with performing deficient audits for DBI that allowed DBI to hide its payroll tax obligations, resulting in significant losses to Plaintiffs. Defendants have brought a third-party

action against DBI, its directors and officers, and Paychex, Inc., a payroll administrator contracted to work with DBI.[1] Now before the Court is a Motion by DBI's former attorney, non-party George Brunelle, Esq., to Quash Defendants' Subpoena, Deposition Notice, and Demands for Document Production ("Motion to Quash"). For the reasons set forth below, Brunelle's Motion to Quash is GRANTED in its entirety.

## I. BACKGROUND

This is Defendants' second attempt to obtain documents and information concerning DBI's dealings with Defendants and Paychex, Inc. from non-party George Brunelle, Esq., DBI's former attorney. (See George Brunelle's Memorandum of Law in Support of Motion to Quash, dated July 18, 2008, ("Brunelle's Mem.") at 1; Defendants' Memorandum of Law in Opposition to Motion to Quash, dated August 15, 2008, ("Defs.' Opp.") at 1.) Defendants' first attempt, a Motion to Compel the production of certain documents, resulted in an April 17, 2008 Order ("April 17, 2008 Order") by Judge John E. Sprizzo, to whom this case was previously assigned. In that Order, Judge Sprizzo denied in part Defendants' Motion to Compel, reasoning that DBI properly had invoked the protections

---

[1] Paychex, Inc. is dismissed from this action by a separate Memorandum & Order of the Court of today's date.

of the attorney-client privilege and the work product doctrine, and had not waived these privileges by entering into an Assignment and Forbearance Agreement with Plaintiffs. The Court reserved decision, pending in camera review, on any challenged documents that might not be covered by the work product doctrine due to the nature of the documents themselves. (See April 17, 2008 Order.)

Based on the continued unavailability of DBI to respond to discovery or a subpoena, Defendants have launched a second attempt to obtain documents and testimony from Mr. Brunelle, arguing in this instance that the relevant privileges have been waived by DBI's provision of the purportedly confidential documents to a third-party, namely Plaintiffs. (See Defs.' Opp. at 2.) Specifically, Defendants refer the Court to an August 2, 2007[2] meeting between Third-Party Defendants Eniko Henits ("Henits"), DBI's former President and Tom Flynn ("Flynn"), a director of DBI, and Plaintiffs' counsel, Eric S. Hutner ("Hutner"), during which Ms. Henits produced a series of

---

[2] Plaintiffs' counsel attests to the August 2, 2007 date of the meeting at which the documents were disclosed. (See Affidavit of Eric S. Hutner, Aug. 12, 2008 ("Hutner Aff."), ¶ 3.) Although, Henits avers that she "[thought] it was earlier than the August 2007 date mentioned by Mr. Hutner," (Affidavit of Eniko Henits, June 18, 2008 ("Henits Aff."), ¶ 5), she provides no alternative date, nor evidence of an earlier date. Thus, the Court accepts August 2, 2007, as the date that the meeting occurred.

purportedly confidential documents to Plaintiffs' counsel. (Affidavit of Eric S. Hutner, Aug. 12, 2008 ("Hutner Aff."), ¶¶ 3-5.)  Defendants argue that Ms. Henits' provision of the documents to Mr. Hutner, a third party, effectively waived any privileges to these documents that could be asserted by DBI.

Brunelle, supported by the Affidavit of Ms. Henits dated June 18, 2008 ("Henits Aff.") contends that Henits' provision of documents to Plaintiffs' counsel did not waive DBI's privileges to those documents, as the documents were exchanged in the context of the Assignment and Forbearance Agreement (the "Agreement") previously executed between the Parties, and the common interests of the Parties in this litigation.  Henits attests that Plaintiffs' counsel visited her home and obtained the documents at issue upon her understanding that he represented DBI and the interests DBI shared with Plaintiffs.  (See Henits Aff.; Brunelle Mem. at 3.)  Specifically, Henits attests that Hutner, who represented Plaintiffs as Assignees of DBI's interests under the Agreement, "informed me that the case would be made stronger if he could also maintain the action on behalf of DBI.  Mr. Hutner led me to believe that he represented DBI for that purpose."  (Henits' Aff., ¶ 5.)  Henits alleges that she furnished the documents to Plaintiffs' counsel based on the understanding that he was representing DBI's interests, and would

4

preserve its legal privileges. (Henits Aff., ¶ 6.) Hutner insists that Ms. Henits was aware, before and during their meeting, that Plaintiffs' counsel did not and could not represent DBI because he represented Plaintiffs. (See Hutner Aff., ¶¶ 3, 8-9.)

The Assignment and Forbearance Agreement, executed by DBI and Plaintiffs on May 3, 2005, among other provisions, provided that DBI would keep Plaintiffs informed about any claims asserted by DBI against Defendants. The Agreement explicitly provided that documents provided by DBI to Pliniffs would be kept confidential. Specifically, the Agreement stated that:

> "DBI shall promptly notify the Assignees of its assertion of or any fact or circumstance which in good faith may provide grounds for its assertion of an Assigned Claim and shall promptly provide the Assignees [Plaintiffs] with any and all documents and information concerning such claim(s) as the Assignees may reasonably request, which documents and information shall be kept confidential by the Assignees and their respective advisers other than in connection with evaluation and pursuit of the Assignees' claim."

(Assignment and Forbearance Agreement at 2, at Affidavit of Jordan Sklar, Aug. 15, 2008 ("Sklar Aff."), Ex. D.)

## II. DISCUSSION

In support of his Motion to Quash, DBI's former attorney, Brunelle argues that under the law of the case, Defendants are

precluded from relitigating the privilege issue based on Judge Sprizzo's April 17, 2008 Order. In response to Defendants' new waiver argument, which was not presented previously to Judge Sprizzo, Brunelle argues that DBI disclosed the confidential documents at issue to Plaintiffs' counsel with the understanding that counsel represented Plaintiffs' and DBI's common legal interests. As such, Brunelle contends, the privileges were preserved under the "common interest" doctrine, an extension to the attorney-client privilege. (Id.)

Motions to quash subpoenas are "entrusted to the sound discretion of the district court." In re Fitch, Inc. v. UBS PaineWebber, Inc., 330 F.3d 104, 108 (2d. Cir. 2003) (citations omitted). Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). When seeking the protection of the attorney-client privilege or the work product doctrine, the party invoking the privilege bears the burden of establishing its applicability. See In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003). With respect to the attorney-client privilege, "disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have

6

originally possessed." In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973). Such disclosure "may effect a waiver of privilege not only as to that communication, but also as to . . . communications made at other times about the same subject." Bower v. Weisman, 669 F. Supp. 602, 604 (S.D.N.Y. 1987) (citations omitted). Waiver of work product protection, however, "will be found only if the party has voluntarily disclosed the work-product in such a manner that it is likely to be revealed to his adversary." Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 479 (S.D.N.Y. 1993). Generally, "[p]rivileges should be narrowly construed and expansions cautiously extended." See, e.g., United States v. Weissman, 195 F.3d 96, 100 (2d Cir. 1999).

"[A]n extension of the attorney-client privilege", the "common interest" rule

> "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected."

United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (internal citations and quotation marks omitted). "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." Gulf Islands

Leasing, Inc. v. Bombardier Capital, Inc., 215 F.R.D. 466, 471 (S.D.N.Y. 2003) (citation omitted). A party invoking the protection of the common interest rule must show that "the communication in question was given in confidence and that the client reasonably understood it to be so given." Schwimmer, 892 F.2d at 244.

    Given the attestations of Ms. Henits, the Court finds that DBI has met its burden, sufficient to warrant the protection of the "common interest" doctrine over the documents at issue. The Assignment and Forbearance Agreement between DBI and Plaintiffs explicitly established a common legal interest between the Parties by contract, and provided for the confidential exchange of documents in furtherance of that interest. Particularly given the backdrop of that Agreement, the Court finds entirely reasonable Ms. Henits' attested impression that Plaintiffs' counsel had entered her home and obtained confidential documents from DBI's files in furtherance of Parties' common legal interest, and would keep those documents confidential. Whether or not Plaintiffs' counsel explicitly represented DBI, Ms. Henits or Mr. Flynn is irrelevant. That Ms. Henits understood that Mr. Hutner was representing the common interest shared by DBI and Plaintiffs insulates the exchanged documents under the "common interest" doctrine.

With regard to the portion of the subpoena requesting Mr. Brunelle's deposition, it is well-established that "depositions of opposing counsel are disfavored." United States v. Yonkers Bd. of Ed., 946 F.2d 180, 185 (2d Cir. 1991). While Brunelle no longer represents DBI, it is not clear to the Court at this time why his testimony is necessary. Defendants may renew their subpoena of Brunelle's testimony, if necessary, at the close of discovery, with an appropriate offer of proof to the Court.

### III. CONCLUSION

For the reasons stated above, Brunelle's Motion to Quash is hereby GRANTED in its entirety.

SO ORDERED.

DATED:     New York, New York
           September 24, 2009

*Deborah A. Batts*
Deborah A. Batts
United States District Judge